UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | No. | 3:09-cr-239 |
| v. | ) | | 3:09-cr-240-13 |
| | ) | | |
| | ) | Judge Trauger | |
| AKIN I. FLOYD | ) | | |

**UNITED STATES' RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO TERMINATE SUPERVISED RELEASE**

The United States of America, by and through the undersigned Assistant U. S. Attorney, hereby responds in opposition to the defendant's motion ("Motion") to terminate supervised release. (D.E. 3647). The Motion should be denied because he fails to establish exceptional circumstances warranting early termination. Floyd is a career criminal who has served only 30 percent of his term of supervised release. Moreover, his employment goals are aspirational and may be achieved without terminating supervised release.

**Background**

Defendant Floyd was convicted upon his plea of guilty to four counts of criminal conduct: possession of five grams or more of crack cocaine with intent to distribute, conspiracy to commit a Hobbs Act Robbery/Extortion, possession a firearm in furtherance of crime of violence, and possession of marijuana in a school zone. (Pretrial Services Report ("PSR"),¶ 38). He was sentenced in 2016 to 240 months in custody, which was later reduced to 162 months. (3:09-cr-239, D.E. 98; 3:09-cr-240, D.E. 2976). The Court imposed a 10-year term of supervised release, which included the condition that the defendant receive permission from this Court or his probation officer before leaving the Middle District of Tennessee. (D.E. 2976). Floyd now seeks early termination of supervised release because he has complied with the conditions, and he views the

travel restrictions as a hindrance to employment opportunities. (D.E. 3647).

<u>Analysis</u>

A defendant seeking early termination of his supervised release must file a motion pursuant to 18 U.S.C. § 3583(e)(1). That section provides, in relevant part, that:

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)[,] terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

"Early termination of supervised release," however, "is a discretionary decision that is only warranted in cases where the defendant shows changed circumstances—such as exceptionally good behavior." *United States v. Atkin*, 38 F. App'x 196, 198 (6th Cir. 2002) (citing *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)).

In this case, the Section 3553 factors weigh in favor of continuing supervised release. Floyd pled guilty to possession and intent to distribute 20 pounds of marijuana near a public school, conspiring to rob another drug dealer, possessing and brandishing a firearm in furtherance of the robbery, and conspiring to possess with intent to distribute approximately 48 grams of cocaine and another three pounds of marijuana. (PSR, ¶ 38). The facts of Floyd's convictions are disturbing. With respect to the marijuana distribution charge in Case No. 3:09-cr-239, Floyd had a United Parcel Service ("UPS") package containing 20 pounds of marijuana shipped to his home. (PSR, ¶ 39). At that time, Floyd lived only 400 feet from a special education public school, potentially placing children at risk of harm. (Id., ¶ 40). In Case No. 3:09-cr-240, Floyd used a gun to rob another drug dealer of $15,000 while selling the dealer a fake kilogram of cocaine. (Id., ¶ 42). An investigation into the "Rollin 60 Crips" gang implicated Floyd in a conspiracy to locate and harm

2

potential witnesses to other crimes. (Id., ¶ 46). The PSR reported the conspiracy involved significant quantities of marijuana and crack. (Id., ¶¶ 48-49).

While the convictions in the instant cases are serious enough on their own to warrant continued supervision, Floyd's Career Offender designation should give this Court additional pause. (Id., ¶ 85). His criminal history includes convictions for armed robbery, aggravated assault, possession of cocaine, and felony possession of a firearm. (Id., ¶¶ 75-83). This lengthy and violent criminal history, when coupled with drug possession and distribution, remains a concern. While Floyd's 37-month supervision has been uneventful, it does not erase a criminal history that lasted for two decades. The Court should further note the United States Office of Pretrial Services and Probation ("USPO") does not support the early termination of supervised release for Career Offenders.

The nature and severity of Floyd's offenses warrants continued supervised release. This is necessary to deter him from engaging in additional criminal conduct and to protect the public from further crimes. In fact, *United States v. Suber*, the case Floyd cites in his Motion, supports this very proposition. 75 Fed.Appx. 442 (6th Cir. 2003). The Sixth Circuit in that case affirmed the district court's denial of early termination of supervised release. *Id*. at 444. There, the court found that the defendant's drug conspiracy and distribution crimes were "sufficiently grave to warrant continued supervised release … and to afford adequate deterrence." *Id*.

Floyd's second basis for early termination, that that his travel restrictions interfere with his ability to start his own trucking company, does not constitute a changed circumstance. Any inconveniences relating to travel restrictions are entirely of his own making. Floyd voluntarily accepted a position with a trucking company. Likewise, he voluntarily decided to start a business

3

which includes regular travel. Floyd was aware of his supervised release conditions when he made those decisions. *See United States v. Hicks*, No. 05-cr-40023-JPG, 2009 WL 1515203 (7th Cir. June 1, 2009) (holding that "desire to work within a particular field that may require travel does not constitute the sort of circumstances that might induce the Court to grant a request for early termination of supervised release in the interests of justice").

Moreover, Floyd's probation officer advised the undersigned that the defendant's professional pursuits may be accommodated in ways other than terminating supervised release. The Motion does not explain how far or how frequently he needs to travel to operate the business. Nor does the Motion address whether he has submitted travel requests to the USPO. However, the USPO is willing to evaluate requests to travel outside of the Middle District of Tennessee. Such options should be explored before terminating supervised release.

Finally, maintaining continued supervision would comport with the kinds of sentences and supervision requirements applied to other similarly situated defendants, thereby avoiding unwarranted disparities among similarly situated defendants.

<u>**Conclusion**</u>

Barring something exceptional, which does not exist in this case, the defendant's term of supervised release should not be terminated merely because he has thus far done what this Court originally required and expected of him. The Court should encourage Floyd to continue abiding

4

by the supervision conditions and to work with the USPO regarding travel restrictions.

Respectfully submitted,

HENRY C. LEVENTIS
UNITED STATES ATTORNEY
Middle District of Tennessee

*/s/ Stephanie N. Toussaint*
Stephanie N. Toussaint
Assistant United States Attorney
719 Church Street, Ste. 3300
Nashville, Tennessee 37203
Telephone: 615-736-5151

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2024, I electronically served one copy of the United States'

Response in Opposition to Defendant's Motion to Terminate Supervised Release with the Clerk

of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to counsel

for defendant, Mr. Joshua L. Brand, 211 Union Street, Suite 200, Nashville, Tennessee, 37201.

*/s/Stephanie N. Toussaint*
Stephanie N. Toussaint
Assistant United States Attorney

5